IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:24-cv-1965 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SIR-MICHAEL JOSEPH DAVENPORT; and | ) | |
| MY UNITY FINANCIAL & TAX | ) | |
| PREPARATION, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

Plaintiff, United States of America, at the request of a delegate of the Secretary of the

Treasury and at the direction of a delegate of the Attorney General, pursuant to 26 U.S.C.

§§ 7402 and 7407 brings this action seeking an injunction barring Sir-Michael Joseph Davenport

("Davenport"), and My Unity Financial & Tax Preparation, LLC ("Unity Tax"), from preparing

federal tax returns for others, engaging in the business of preparing federal tax returns, and

employing any person acting as a federal tax return preparer. In support of this action, the United

States alleges as follows:

**Jurisdiction and Defendants**

1.      Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402 and

7407.

2.      Defendant Sir-Michael Joseph Davenport resides in Joliet, Illinois, within the

jurisdiction of this Court.

3.      Defendant My Unity Financial & Tax Preparation, LLC, was formed under the

laws of the State of Illinois in 2020 and has a principal place of business at 827 Campus Drive, Joliet, Illinois, within the jurisdiction of this Court. Davenport is the sole owner of Unity Tax.

### Overview of Davenport's Tax Preparation Activities

4.      Davenport is a paid tax return preparer who prepares and files federal income tax returns for customers, many of whom reside in Joliet, Shorewood, New Lenox, Crest Hill, Chicago, Bolingbrook, Lockport, and the surrounding areas within the State of Illinois.

5.      Davenport began preparing tax returns in or around 2018.

6.      Davenport is not known to hold any professional or business licenses. His highest level of education is unknown.

7.      Davenport is not known to have undertaken any formal education in accounting or taxation, but learned how to prepare tax returns by taking online tax preparation courses.

8.      Davenport's business, My Unity Financial & Tax Preparation, LLC, was formed under the laws of the State of Illinois in or around 2020 and has two employees in addition to Davenport himself.

9.      In addition to tax preparation services, Davenport and Unity Tax also offer "credit repair" and bookkeeping services.

10.      Davenport and Unity Tax advertise their services through Unity Tax's two websites, on Facebook and Yelp, and using physical advertisements such as posters.

11.      Davenport conducts his tax preparation business, Unity Tax, at 827 Campus Drive, Joliet, Illinois. Davenport also travels to his clients' homes to prepare the clients' returns or meets his clients using video-conferencing software such as Zoom and has clients send him their documents by text, email, or by uploading them to an online portal.

12.      Davenport and Unity Tax use tax preparation programs like TurboTax or

FreeTaxUSA to prepare their customers' returns. These programs are generally licensed only for personal use and are not intended to be used by paid tax return preparers.

13.     Davenport and Unity Tax sometimes charge clients a flat fee to prepare their federal tax returns and sometimes charge a percentage of the refund to which the customer would be entitled, with charges ranging from approximately $125 to over $1,000 per return.

14.     Davenport typically instructs his clients to pay him via CashApp or Zelle, sometimes to an account registered in his wife's name, from whom he is currently believed to be legally separated and who was, at least at one time, an employee of Unity Tax.

15.     Davenport and Unity Tax prepare false and fraudulent federal tax returns on behalf of their customers to improperly reduce the customers' tax liabilities and/or to obtain tax refunds to which the customers are not entitled.

**Davenport's Efforts to Conceal His Tax Preparation Activities**

16.     The true scope of Davenport's and Unity Tax's tax return preparation activities is unknown because Davenport conceals his identity from the IRS as a paid tax return preparer.

17.     Anyone who prepares or assists in preparing federal tax returns for compensation is required to have a valid Preparer Tax Identification Number ("PTIN"), which is a unique identification number assigned by the IRS.

18.     Under 26 U.S.C. § 6695(b) and (c) and § 6109(a)(4), paid tax return preparers are required to identify themselves as the preparer on all federal tax returns that they prepare for compensation by signing their names and reporting their PTINs.

19.     The IRS assigned Davenport a PTIN on January 5, 2018.

20.     Despite being issued a PTIN, Davenport operates as a "ghost preparer," meaning he does not sign his clients' tax returns, nor does he identify himself as the paid preparer by

reporting his PTIN on the returns he prepares for paying clients.

21.     Instead, Davenport provides a cover letter to his customers, upon which he lists his PTIN and other contact information.

22.     Davenport knew he had to sign his name and report his PTIN on each federal income tax return he prepared for compensation, but instead used software to prepare returns that does not allow him to report a PTIN or sign as a paid preparer.

23.     Since January 1, 2012, IRS regulations have required any tax return preparer who anticipates preparing and filing more than 10 tax returns during a calendar year to obtain an Electronic Filing Identification Number ("EFIN") and use IRS e-file. The IRS assigns an EFIN to firms that have completed an application process and have passed a suitability check to become an authorized IRS e-file provider able to file tax returns electronically.

24.     The IRS has no record of Davenport, Unity Tax, or any other entity associated with Davenport having applied for, or having been issued, an EFIN.

25.     Because the programs Davenport and Unity Tax use to prepare their clients' tax returns are intended for personal rather than professional use, Davenport creates accounts for each of his customers using either the customers' preexisting emails or emails he creates for them in order to complete their returns. When the returns are filed, it appears that the clients filed the returns themselves.

26.     The IRS first became aware of Davenport's and Unity Tax's fraudulent tax return preparation schemes when a former customer of theirs filed a complaint regarding the preparation of the customer's amended tax return for tax year 2018. The IRS identified the computer IP address used to transmit that return and found that it was also used to file the 2020 tax returns for three of Davenport's relatives.

27. The IRS identified that IP address as belonging to Davenport and found that it was used to file a total of 376 federal tax returns in processing year 2021.

28. The IRS subsequently identified an additional IP address belonging to Davenport.

29. That additional IP address was used to file a total of 213 federal tax returns in processing year 2022.

**Davenport's False and Fraudulent Return Preparation Scheme**

30. The following are some of the common characteristics found in the returns filed under the IP addresses linked to Davenport and Unity Tax: no paid preparer information was listed on the return; the taxpayer generally resided in the same geographic area as Davenport and/or Unity Tax; for taxpayers who were self-employed, the taxpayer's self-occupation was "GENERAL;" and most of the Schedule C business descriptions were barber shops, beauty salons, or driver.

31. Of the 376 returns filed in processing year 2021 from an IP address associated with Davenport and Unity Tax, 258 of those returns (or approximately 69%) included a Schedule C that reported a net business loss, with an average loss of $31,879 per return.

32. Of the 213 returns filed in processing year 2022 from an IP address associated with Davenport and Unity Tax, 172 of those returns (or approximately 81%) included a Schedule C that reported a net business loss, with an average loss of $26,507 per return.

33. The Schedule C, Profit or Loss from Business, is a form attached to an individual's federal income tax return (Form 1040) and is used to report profits and losses from a sole proprietorship. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income ("AGI").

34.    As there is no independent third-party reporting of self-employment income, there is no way for the IRS to verify the numbers reported on Schedule C without conducting an examination.

35.    Davenport and Unity Tax also prepared tax returns for their customers that claimed a larger Earned Income Tax Credit ("EITC") than the amount to which their customers were entitled.

36.    The EITC is a refundable credit available to eligible lower-income individuals who have earned income that does not exceed a specified amount. The EITC reduces the amount of tax an eligible individual owes and can result in a refund.

37.    For each tax return prepared that claims the EITC, the tax return preparer must affix to that return a Form 8867 ("Paid Preparer's Due Diligence Checklist").

38.    As part of the IRS's investigation, a revenue agent interviewed 21 customers who had their 2021 tax returns prepared by Davenport and Unity Tax.

39.    Davenport and Unity Tax routinely prepared a Profit or Loss from Business Statement ("Schedule C") reporting fictitious businesses for his customers. These false Schedules C reported minimal or no income and large fabricated and/or manipulated expenses to fraudulently reduce taxable income and thus, reduce the amount of tax owed by Davenport's and Unity Tax's customers and/or fraudulently increase the amount of their customers' tax refunds, which sometimes included fraudulent claims for the EITC.

40.    Davenport and Unity Tax sometimes placed exaggerated or false expenses on Schedules C for customers with legitimate businesses to generate fraudulent losses. Those losses reduced their customers' taxable income and/or maximized their EITC for the purpose of generating a fraudulent refund.

41.     In most cases, the businesses Davenport and Unity Tax reported on the Schedules C attached to their customers' federal income tax returns simply did not exist. The customers never told Davenport, nor did Davenport ask them, whether they owned or operated a business or whether they incurred the business expenses or business income reported on their returns.

42.     In many cases, Davenport and Unity Tax failed to provide their customers with a copy of their completed federal tax return, or at least the Schedule C filed with their return, as required by 26 U.S.C. §§ 6695(a) and 6107(a).

43.     Davenport and Unity Tax have engaged in a pervasive pattern and practice of violating the federal tax laws, and their abusive tax return preparation practices have resulted in significant harm to the Government.

## Examples of Davenport's Schedule C Fabrications

**Customer 1[1]**

44.     Davenport prepared Customer 1's 2021 federal income tax return in-person at Unity Tax's office at 827 Campus Drive in Joliet, Illinois.

45.     During 2021, Customer 1 worked approximately 70 hours per week as a police officer for the State of Illinois and received wages for doing this work.

46.     Customer 1 provided Davenport with a copy of their W-2s and receipts for gas, but Davenport told him that information was were not needed.

47.     Customer 1 paid Davenport 10% of their refund amount to prepare their 2021 federal income tax return.

48.     Davenport did not provide Customer 1 with a copy of their 2021 federal income

---

[1] To protect the identities of individual customers, the complaint refers to customers by number. A customer key, which identifies each customer by name, will be served upon each Defendant with the summons and a copy of the complaint.

tax return at the time Customer 1 signed the return.

49.　　Customer 1 did not recognize either the phone number or email address provided for them and included on their 2021 federal income tax return.

50.　　Customer 1's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

51.　　On the Schedule C attached to Customer 1's 2021 return, Davenport falsely reported that Customer 1 owned an investigation business through which Customer 1 purportedly had $0 in gross income and incurred business expenses totaling $39,898, resulting in a $39,898 net business loss. This fictitious loss fraudulently reduced Customer 1's taxable income.

52.　　Customer 1 did not own an investigation business, did not tell Davenport that they owned an investigation business, did not provide those amounts to Davenport, and does not know why Davenport reported this information on Customer 1's 2021 federal income tax return.

53.　　Davenport knowingly reported the false business loss, which fraudulently increased Customer 1's tax refund on Customer 1's 2021 federal income tax return.

**Customer 2**

54.　　Davenport prepared Customer 2's 2021 federal income tax return.

55.　　Davenport met with Customer 2 virtually.

56.　　During 2021, Customer 2 worked as a mail handler for the United States Postal Service and received wages for doing this work.

57.　　Customer 2 provided Davenport—via an app where they were able to upload documents—with a copy of their W-2, rental home information, and information about a dependent.

58.　　Customer 2 paid Davenport approximately $295 to prepare their 2021 federal

income tax return.

59. Customer 2's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

60. On the Schedule C attached to Customer 2's 2021 return, Davenport falsely reported that Customer 2 owned a beauty salon business through which Customer 2 purportedly had $1,769 in gross income and incurred business expenses totaling $28,060, resulting in a $29,291 net business loss. This fictitious loss fraudulently reduced Customer 2's taxable income.

61. Customer 2 did not own a beauty salon business, did not tell Davenport that they owned a beauty salon business, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 2's 2021 federal income tax return.

62. Davenport knowingly reported the false business loss, which fraudulently increased Customer 2's tax refund on Customer 2's 2021 federal income tax return.

**Customer 3**

63. Davenport prepared Customer 3's 2021 federal income tax return.

64. During 2021, Customer 3 worked as a diesel mechanic and received wages for doing this work.

65. Customer 3 provided Davenport—via email—with a copy of their W-2 and receipts for tools.

66. Customer 3's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

67. On the Schedule C attached to Customer 3's 2021 return, Davenport falsely reported that Customer 3 owned a barber shop business through which Customer 3 purportedly had $3,114 in gross income and incurred business expenses totaling $30,604, resulting in a

$27,490 net business loss. This loss fraudulently reduced Customer 3's taxable income.

68.     Customer 3 did not own a barber shop business, did not tell Davenport that they owned a barber shop business, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 3's 2021 federal income tax return.

69.     Davenport knowingly reported the false business loss, which fraudulently increased Customer 3's tax refund on Customer 3's 2021 federal income tax return.

**Customer 4**

70.     Davenport prepared Customer 4's 2021 federal income tax return.

71.     During 2021, Customer 4 worked as a correctional treatment officer for the State of Illinois and received wages for doing this work.

72.     During 2021, Customer 4 also worked as a rideshare driver for Uber and was issued a Form 1099 for the income they received for doing this work.

73.     Customer 4 provided Davenport with a copy of their W-2, the 1099 from Uber, gas receipts, oil change receipts, retirement information, health information, and their child's school information.

74.     Customer 4 paid Davenport approximately $300 via Zelle to prepare their 2021 federal income tax return.

75.     Customer 4's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

76.     On the Schedule C attached to Customer 4's 2021 return, Davenport reported that Customer 4 owned a taxi and limousine business through which Customer 4 had $4,563 in gross income and purportedly incurred business expenses totaling $19,820, resulting in a $15,257 net business loss. The reported net loss fraudulently reduced Customer 4's taxable income.

77.     The $19,820 in business expenses Davenport reported on Customer 4's Schedule C consisted of $2,349 in advertising expenses, $2,995 in car and truck expenses, $4,565 in office expenses, $2,244 in repair and maintenance expenses, $3,131 in supplies, and $4,536 in utilities expenses.

78.     Customer 4 rented a vehicle from Uber to offer rideshare services. Customer 4 did not incur any advertising expenses, and the $2,349 reported as such on the Schedule C was the cost to rent the car from Uber.

79.     Customer 4 did incur the $2,995 reported on the Schedule C as car and truck expenses for gas and oil changes.

80.     Customer 4 did not incur any expenses for office expenses, supplies, or utilities, and only incurred approximately $100 for a tow truck service, but did not incur any other expenses for repairs or maintenance as reported on the Schedule C, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 4's 2021 federal income tax return.

81.     Davenport knowingly reported the false and exaggerated business losses, which fraudulently increased Customer 4's tax refund on Customer 1's 2021 federal income tax return.

**Customer 5**

82.     Davenport prepared Customer 5's 2021 federal income tax return.

83.     During 2021, Customer 5 worked at a clothing apparel store and received wages for doing this work.

84.     Customer 5 provided Davenport—via text message—with a copy of their W-2, ID, and Social Security card.

85.     Customer 5 paid Davenport $175 via CashApp to prepare their 2021 federal

11

income tax return.

86.     Davenport did not provide Customer 5 with a copy of their 2021 federal income tax return.

87.     Customer 5's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

88.     On the Schedule C attached to Customer 5's 2021 return, Davenport falsely reported that Customer 5 owned a barber shop business through which Customer 5 purportedly had $4,864 in gross income and incurred business expenses totaling $37,988, resulting in a $33,124 net business loss. This loss fraudulently reduced Customer 5's taxable income.

89.     Customer 5 did not own a barber shop business, did not tell Davenport that they owned a barber shop business, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 5's 2021 federal income tax return.

90.     Davenport knowingly reported the false business loss, which fraudulently increased Customer 5's tax refund on Customer 5's 2021 federal income tax return.

**Customer 6**

91.     Davenport prepared Customer 6's 2021 federal income tax return.

92.     Customer 6 met with Davenport virtually.

93.     During 2021, Customer 6 worked as a regional account manager for a health care company and received wages for doing this work.

94.     Customer 6 provided Davenport—via email—with a copy of their tax documents.

95.     Customer 6 paid Davenport approximately $800 to prepare their 2021 federal income tax return.

96.     Customer 6's return did not include Davenport's name, signature, or PTIN in the

paid preparer section.

97.     On the Schedule C attached to Customer 6's 2021 return, Davenport falsely reported that Customer 6 owned a barber shop business through which Customer 6 purportedly had $7,537 in gross income and incurred business expenses totaling $30,876, resulting in a $23,339 net business loss. This loss fraudulently reduced Customer 6's taxable income.

98.     Customer 6 did not own a barber shop business, did not tell Davenport that they owned a barber shop business, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 6's 2021 federal income tax return.

99.     Davenport knowingly reported the false business loss, which fraudulently increased Customer 6's tax refund on Customer 6's 2021 federal income tax return.

100.     Customer 6's 2021 federal income tax return did not contain a Paid Preparer's Due Diligence Checklist (Form 8867), even though Customer 6's return claimed the EITC.

**Customer 7**

101.     Davenport prepared Customer 7's 2021 federal income tax return.

102.     During 2021, Customer 7 worked as a paraprofessional for a school and received wages for doing this work.

103.     Customer 7 provided Davenport—via email—with a copy of their W-2 and ID.

104.     Customer 7 paid Davenport a percentage of their refund amount to prepare their 2021 federal income tax return.

105.     Davenport did provide Customer 7 with a copy of their 2021 federal income tax, but did not include a copy of the Schedule C filed with that return on the copy provided to Customer 7.

106.     Customer 7's return did not include Davenport's name, signature, or PTIN in the

paid preparer section.

107.    On the Schedule C attached to Customer 7's 2021 return, Davenport falsely reported that Customer 7 owned a beauty salon business through which Customer 7 purportedly had $2,535 in gross income and incurred business expenses totaling $14,847, resulting in a $12,312 net business loss. This loss fraudulently reduced Customer 7's taxable income.

108.    Customer 7 did not own a beauty salon business, did not tell Davenport that they owned a beauty salon business, did not provide these amounts to Davenport, and does not know why Davenport reported this information on Customer 7's 2021 federal income tax return.

109.    Davenport knowingly reported the false business loss, which fraudulently increased Customer 7's tax refund on Customer 7's 2021 federal income tax return.

110.    Customer 7's 2021 federal income tax return did not contain a Paid Preparer's Due Diligence Checklist (Form 8867), even though Customer 7's return claimed the EITC.

**<u>Customer 8</u>**

111.    Davenport prepared Customer 8's 2021 federal income tax return.

112.    During 2021, Customer 8 worked at a transport company and received wages for doing this work.

113.    Customer 8 provided Davenport—via fax—with a copy of their W-2, information about their children, Social Security numbers, ID, and school records for their children.

114.    Customer 8 paid Davenport approximately $500 to $600 to prepare their 2021 federal income tax return.

115.    Davenport did not provide Customer 8 with a copy of their 2021 federal income tax return at the time Customer 8 signed the return.

116.    Customer 8's return did not include Davenport's name, signature, or PTIN in the

14

paid preparer section.

117.    On the Schedule C attached to Customer 8's 2021 return, Davenport reported that Customer 8 owned a beauty salon business through which Customer 8 purportedly had $5,141 in gross income and incurred business expenses totaling $38,997. resulting in a $33,856 net business loss. This loss fraudulently reduced Customer 8's taxable income.

118.    Customer 8 did have two side jobs/businesses in 2021.

119.    Customer 8 prepared and sold food at their W-2 wage job site on occasion. Customer 8 made approximately $700 to $800 in gross income from this side job in 2021 and lost approximately $1,100.

120.    Customer 8 occasionally braided hair for compensation in 2021. Customer 8 made approximately $400 in gross income from this side job in 2021 and did not lose any money.

121.    Other than occasionally braiding hair in 2021, Customer 8 did not own a beauty salon business, did not tell Davenport that they owned a beauty salon business, did not provide information about any amount of expenses for a beauty salon business to Davenport, and does not know why Davenport reported this information on Customer 8's 2021 federal income tax return.

122.    Davenport knowingly reported the false business loss, which fraudulently increased Customer 8's tax refund on Customer 8's 2021 federal income tax return.

123.    Customer 8's 2021 federal income tax return did not contain a Paid Preparer's Due Diligence Checklist (Form 8867), even though Customer 8's return claimed the EITC.

**Customer 9**

124.    Davenport prepared Customer 9's 2021 federal income tax return in-person at Unity Tax's office at 827 Campus Drive in Joliet, Illinois.

125.     Davenport prepared Customer 9's 2021 federal income tax return by instructing his employee, Gabriella Gutierrez, to input specific information into the software program to prepare the return.

126.     During 2021, Customer 9 worked at a car dealership and received wages for doing this work.

127.     Customer 9 provided Davenport with a copy of their W-2, their prior-year return, social security card, ID, and a 1099 for a bonus received.

128.     Customer 9 paid Davenport $1,100 to prepare their 2021 federal income tax return. This fee was based on a percentage of the refund amount and Customer 9 paid via Zelle.

129.     Davenport did not provide Customer 9 with a copy of their 2021 federal income tax return at the time Customer 9 signed the return, but did provide Customer 9 with a copy via email after one was requested, approximately one month after Davenport prepared it.

130.     Customer 9 did not recognize either the phone number or email address provided for them and included on their 2021 federal income tax return.

131.     Customer 9's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

132.     On the Schedule C attached to the 2021 return, Davenport falsely reported that Customer 9 owned a barber shop business through which Customer 9 purportedly had $6,116 in gross income and incurred business expenses totaling $57,383, resulting in a $51,267 net business loss. This loss fraudulently reduced Customer 9's taxable income.

133.     Customer 9 did not own a barber shop business, did not tell Davenport that they owned a barber shop business, did not provide these amounts to Davenport, and does not know why Davenport reported that information on Customer 9's 2021 federal income tax return.

134.    Davenport knowingly reported the false business loss, which fraudulently increased Customer 9's tax refund on Customer 9's 2021 federal income tax return.

135.    Customer 9 contacted Davenport in or around February 2022 because they received a smaller refund than the previous year and wanted to know why. Davenport responded via text message saying, "I didn't have her go higher than a certain number just to be safe if you want her to go higher and abs have her do that."

136.    Davenport contacted Customer 9 via text message in or around July 2022 telling them, "If you get anything from the IRS, don't be alarmed. Before you do anything, give me a call so we can review it together."

**Customer 10**

137.    Davenport prepared Customer 10's 2021 federal income tax return.

138.    Customer 10 spoke with Davenport by phone and sent him documents via email in order to have their return prepared.

139.    During 2021, Customer 10 worked as a manager at Amazon and received wages for doing this work.

140.    Customer 10 provided Davenport—via email—with a copy of their W-2 and 401(k) information.

141.    Customer 10 paid Davenport $600—via Davenport's and Unity Tax's website—to prepare their 2021 federal income tax return.

142.    Customer 10's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

143.    On the Schedule C attached to the 2021 return, Davenport falsely reported that Customer 10 owned a beauty salon business through which Customer 10 purportedly had $4,116

17

in gross income and incurred business expenses totaling $48,243, resulting in a $44,127 net business loss. This loss fraudulently reduced Customer 10's taxable income.

144.    Customer 10 did not own a beauty salon business, did not tell Davenport that they owned a beauty salon business, did not provide these amounts to Davenport, and does not know why Davenport reported that information on Customer 10's 2021 federal income tax return.

145.    Davenport knowingly reported the false business loss, which fraudulently increased Customer 10's tax refund on Customer 10's 2021 federal income tax return.

**Customer 11**

146.    Davenport prepared Customer 11's 2021 federal income tax return.

147.    During 2021, Customer 11 worked as a police officer for the Cook County Sheriff's Office and received wages for doing this work.

148.    Customer 11 provided Davenport with a copy of their W-2 and ID via text message.

149.    Customer 11 paid Davenport approximately $400 to $500 to prepare their 2021 federal income tax return. This amount was based on a percentage of the refund amount. Customer 11 paid the fee via Zelle.

150.    Davenport did not provide Customer 11 with a copy of their 2021 federal income tax return at the time Customer 11 signed the return.

151.    Customer 11 contacted Davenport to obtain a copy of their 2021 federal income tax return after receiving a letter from an IRS revenue agent. Davenport told Customer 11 that someone had made a complaint regarding his tax preparation business to the IRS, and that Customer 11 did not need to contact the IRS if they did not think Davenport did anything wrong or if they were satisfied with Davenport's service.

152.    Customer 11's return did not include Davenport's name, signature, or PTIN in the paid preparer section.

153.    On the Schedule C attached to the 2021 return, Davenport falsely reported that Customer 11 owned a residential business through which Customer 11 purportedly had $4,184 in gross income and incurred business expenses totaling $80,015, resulting in a $75,831 net business loss. This loss fraudulently reduced Customer 11's taxable income.

154.    Customer 11 did not own a residential business, did not tell Davenport that they owned a residential business, did not provide these amounts to Davenport, and does not know why Davenport reported that information on Customer 11's 2021 federal income tax return.

155.    Davenport knowingly reported the false business loss, which fraudulently increased Customer 11's tax refund on Customer 11's 2021 federal income tax return.

## HARM

156.    Davenport's and Unity Tax's preparation of false and fraudulent tax returns harms the United States Treasury through lost tax revenue.

157.    For example, during its investigation, the IRS interviewed and reviewed the tax returns of 21 individuals who reported that Davenport prepared their 2021 federal income tax returns in processing year 2022. Of those 21 customers, the IRS determined that 18 had errors on their 2021 tax returns, or 86% of the customers interviewed. The average deficiency on those returns was $4,389. In processing year 2022, Davenport prepared at least 189 federal income tax returns with a Schedule C attached. If approximately 86%, or 163, of those returns contained errors with an average deficiency of $4,389, the estimated tax harm caused by Davenport for tax year 2021 alone would amount to $715,407. It is likely that the total underreporting and underpayments caused by Davenport and Unity Tax are much greater, as the IRS lacks the

resources to examine all the returns that Davenport prepared.

158.    Because Davenport does not identify himself as the paid preparer on any of the federal income tax returns that he prepares for compensation, the total amount of lost revenue is unknown.

159.    The fraudulent returns prepared and filed by Davenport and Unity Tax have caused — and continue to cause — substantial harm to the Government by falsely reducing their customers' reported tax liabilities, helping the customers avoid paying their fair share of tax, or obtaining refunds to which the customers were not entitled.

160.    Davenport and Unity Tax further harm the United States because the Internal Revenue Service must devote some of its limited resources to investigating their tax return preparation activities, including ascertaining their customers' correct tax liabilities, recovering any refunds erroneously issued, and attempting to collect any additional taxes and penalties, some of which may not be collectible. The IRS investigation into Davenport's and Unity Tax's preparation activities has thus reduced the resources that would otherwise be available to assist other taxpayers.

161.    Because Davenport operates as a "ghost preparer," identifying and recovering all lost tax revenues resulting from his activities may be impossible.

162.    Davenport's and Unity Tax's customers have also been harmed because they paid Davenport and Unity Tax fees to prepare proper tax returns, but Davenport and Unity Tax instead prepared false and fraudulent returns that substantially underreported and underpaid their customers' correct tax liabilities or overstated their entitlement to refunds, potentially exposing their customers to statutory penalties.

163.    In addition to the direct harm Davenport and Unity Tax have caused the United States and their customers by preparing false and fraudulent tax returns, Davenport's and Unity Tax's activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

164.    Davenport's and Unity Tax's actions also cause intangible harm to honest tax return preparers, over whom Davenport and Unity Tax gain an unfair competitive advantage by preparing returns that falsely or fraudulently underreport their customers' tax liabilities.

165.    The harm to the government and the public will continue unless Davenport and Unity Tax are enjoined because, given the seriousness and pervasiveness of their illegal conduct, without an injunction Davenport and Unity Tax are likely to continue preparing false and fraudulent federal income tax returns for customers.

166.    An injunction will serve the public interest because it will put a stop to Davenport's and Unity Tax's illegal conduct and the harm it causes the United States and its citizens.

### COUNT I: Injunction under 26 U.S.C. § 7407 for Violation of 26 U.S.C. §§ 6694 and 6695 and for Deceptive or Fraudulent Conduct That Interferes With Internal Revenue Code Administration

167.    The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

168.    Pursuant to 26 U.S.C. § 7407, a court is authorized to enjoin a tax return preparer who, among other things, engages in conduct subject to penalty under 26 U.S.C. § 6694 or 26 U.S.C. § 6695, or who engages in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

169.    26 U.S.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return

or a substantial portion thereof.

170.   Davenport and Unity Tax are tax return preparers within the meaning of 26 U.S.C. § 7701(a)(36).

171.   26 U.S.C. § 6694(a) penalizes a tax return preparer if: (1) the preparer prepared a return or claim for refund that included an understatement of liability due to a position for which there was not a realistic possibility of being sustained on the merits; (2) the preparer knew (or reasonably should have known) of such position; and (3) the position was not properly disclosed or was frivolous.

172.   26 U.S.C. § 6694(e) defines understatement of liability to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

173.   In violation of 26 U.S.C. § 6694(a), Davenport and Unity Tax prepared returns for customers that understated the customers' tax liabilities or overstated their refunds, and that Davenport and Unity Tax knew or should have known contained positions for which there was no substantial authority or for which there was no reasonable basis.

174.   26 U.S.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim with an understatement of liability: (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

175.   In violation of 26 U.S.C. § 6694(b), Davenport and Unity Tax prepared tax returns for customers that they knew or reasonably should have known contained false business income and expenses that understated their customers' tax liabilities or overstated their refunds.

176.   In violation of 26 U.S.C. § 6694(b), Davenport and Unity Tax recklessly or intentionally disregarded rules and/or regulations by reporting or manipulating false business income and expenses that understated their customers' tax liabilities or overstated their refunds.

177.     26 U.S.C. § 6695(b) penalizes a tax return preparer who fails to sign a return that they are required to sign. 26 U.S.C. § 6695(c) penalizes a tax return preparer who, without reasonable cause or not due to excusable neglect, fails to include an identifying number, such as a PTIN, on a tax return or claim for refund.

178.     In violation of 26 U.S.C. § 6695(b) and 6695(c), Davenport failed to sign and furnish an identification number, as a paid preparer, on all of the federal income tax returns that the IRS investigation revealed that he prepared and filed.

179.     26 U.S.C. § 6695(g) penalizes a tax return preparer who fails to comply with due diligence requirements imposed by the Secretary, including affixing Form 8867, Paid Preparer's Due Diligence Checklist, to the returns the tax return preparer prepared.

180.     In violation of 26 U.S.C. § 6695(g), Davenport and Unity Tax repeatedly failed to affix Form 8867, Paid Preparer's Due Diligence Checklist, to the returns they prepared that contained the Earned Income Tax Credit.

181.     An injunction against Davenport and Unity Tax is necessary and appropriate to prevent the recurrence of conduct by Davenport and Unity Tax that is subject to penalty under 26 U.S.C. §§ 6694 and 6695.

182.     Additionally, under 26 U.S.C. § 7407, if the court finds that a return preparer has continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if the court further finds that a narrower injunction prohibiting only the enumerated conduct would not be sufficient to prevent further interference with the proper administration of the internal revenue laws, the court may enjoin that person from further acting as a federal income tax return preparer.

183.     Davenport and Unity Tax have continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695.

184.     Given the variety, duplicity, and duration of the defendants' fraudulent tax preparation activities, anything less than a permanent injunction and complete bar on the preparation of tax returns is unlikely to stop them from preparing fraudulent tax returns.

**COUNT II: Injunction under 26 U.S.C. § 7402(a) for Unlawful Interference with Enforcement of the Internal Revenue Laws and Appropriateness of Injunctive Relief**

185.     The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

186.     Pursuant to 26 U.S.C. § 7402(a), a court is authorized to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

187.     26 U.S.C. § 7402(a) expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

188.     Davenport's and Unity Tax's activities described above substantially interfere with the enforcement of the internal revenue laws because they prepare and file numerous fraudulent tax returns that result in customers not paying their true federal tax liabilities and receiving tax refunds to which they are not entitled.

189.     By fabricating income and expenses on Schedules C, items for which there is no independent third-party reporting, Davenport and Unity Tax have selected schemes that the IRS can detect only by auditing returns or interviewing their customers. Because Davenport and Unity Tax know that the IRS lacks the resources to audit every return that includes these schemes, they are actively subverting the American tax system, which relies on taxpayers to self-report their income and expenses fully and accurately.

190.     An injunction prohibiting Davenport and Unity Tax from preparing or assisting in

the preparation of tax returns is needed to stop them from preparing and filing fraudulent tax returns and to prohibit them from otherwise interfering with the proper administration and enforcement of the internal revenue laws now and in the future.

191.    If Davenport and Unity Tax are not enjoined, the United States will suffer irreparable harm from the underpayment of taxes and the exhaustion of resources to enforce the internal revenue laws.

192.    Enjoining Davenport and Unity Tax will advance the public interest because an injunction will stop their illegal conduct and the harm that conduct is causing the United States Treasury and the public.

193.    An injunction under 26 U.S.C. § 7402 is necessary and appropriate because the United States has no adequate remedy at law.

**WHEREFORE**, the United States of America prays for the following:

A.      That the Court find that Defendants have repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the tax laws; that, pursuant to 26 U.S.C. § 7407, an injunction merely prohibiting conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, or other fraudulent or deceptive conduct, would be insufficient to prevent their interference with the proper administration of the tax laws; and that Defendants should be permanently enjoined from acting as a tax preparer.

B.      That the Court find that Defendants have interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to 26 U.S.C. § 7402(a);

C.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407 enter a permanent

injunction enjoining Davenport and Unity Tax, their officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with them, from directly or indirectly:

1. Preparing or assisting in the preparation of federal tax returns, amended returns, and other related documents and forms for anyone other than Davenport;

2. Advising, counseling, or instructing anyone about the preparation of a federal tax return;

3. Filing or assisting in the filing of a federal tax return for anyone other than Davenport;

4. Owning, managing, controlling, working for, or volunteering for a tax-return preparation business;

5. Advertising tax return preparation services through any medium, including the internet and social media;

6. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

7. Representing customers in connection with any matter before the IRS;

8. Employing any person to work as a federal income tax return preparer;

9. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the IRS;

10. Selling, providing access, or otherwise transferring to any person some or all

of the proprietary assets of Davenport or My Unity Tax generated by their tax return preparation activities, including but not limited to customers lists;

11. Referring any customer to a tax preparation firm or a tax return preparer, or otherwise suggesting that a customer use any particular tax preparation firm or tax return preparer; and/or

12. Engaging in any conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

D.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter a permanent injunction enjoining Davenport and My Unity Tax, their officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with their, from directly or indirectly operating a business that prepares federal tax returns;

E.     That the Court enter an order requiring Defendants to prominently post a copy of the permanent injunction (with dimensions of at least 12 by 24 inches) at the location where he or My Unity Tax conducts business;

F.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Davenport and Unity Tax to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) all persons for whom defendants or persons they employed prepared federal tax returns or claims for refund, for processing years beginning in 2019 and continuing through this litigation;

G.     That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Davenport and Unity Tax, within 30 days of receiving the Court's order, to contact by U.S. mail and, if an email address is known, by email, all persons for whom they or preparers

they employed have prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2019, as well as all employees or independent contractors they have had since January 1, 2019, and to inform them of the permanent injunction by sending each of them a copy of the order of permanent injunction, with no other enclosures unless approved by the Department of Justice;

H.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Davenport and Unity Tax, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that they have received a copy of the Court's order and complied with the terms described in paragraphs C through G of this Complaint;

I.      That the Court grant the United States such and further other relief as the Court deems appropriate.

UNITED STATES OF AMERICA

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/Eric A. Ashby II*
ERIC A. ASHBY II
Trial Attorney, Tax Division
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-6508
Fax: (202) 514-5238
Email: Eric.A.Ashby@usdoj.gov

Local Counsel:

MORRIS PASQUAL
Acting United States Attorney